Case 4:24-cv-01393   Document 27   Filed on 12/12/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
December 12, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTURO BARONA, | § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | CIVIL ACTION NO. 4:24-CV-01393 |
| STATE FARM LLOYDS, | § § § | |
| *Defendant.* | § | |

## ORDER

Pending before this Court is Defendant State Farm Lloyds' ("Defendant" or "State Farm") Motion for Summary Judgment (Doc. No. 15) and State Farm's Motion to Exclude Testimony of Scott Berkenkamp (Doc. No. 16). Upon close review of the filings, admissible summary judgment evidence, and the relevant legal standards, this Court hereby grants State Farm's Motion for Summary Judgment and dismisses the case with prejudice.

### I.  FACTUAL BACKGROUND

This case arises from an insurance policy dispute over whether State Farm has a contractual obligation to provide coverage for the Plaintiff's property damage caused by burst frozen pipes. On December 24, 2022, freezing weather allegedly froze the Plaintiff's plumbing fixtures, causing significant water damage to the Plaintiff's commercial property when the plumbing eventually expanded and burst. (Doc. No. 17-1). On January 5, 2023, Plaintiff reported the damage to his insurance company, State Farm. (Doc. No. 15-2). On January 20, 2023, State Farm sent an adjuster to assess the property damage and review the damage for coverage eligibility. (*Id.* at 3). In correspondence with the Plaintiff, the State Farm adjuster memorialized their meeting and reported

that the Plaintiff stated that he turned off the heat to his building but did not also shut off the water supply or drain the pipes. (*Id.* at 19). Plaintiff does not dispute these statements, and he reaffirmed this series of events in his deposition. (*Id.* at 10).

On January 24, 2023, State Farm corresponded with the Plaintiff and informed him that his damages were not covered by the insurance policy. (*Id.* at 19). State Farm referenced the "frozen plumbing" provision of the insurance policy. (*Id.* at 20). The provision, in relevant part, states:

### SECTION I – COVERED CAUSES OF LOSS

We insure for accidental direct physical loss to Covered Property unless the loss is:

1. Excluded in SECTION I – EXCLUSIONS; or
2. Limited in the Property Subject to Limitations provision.

### SECTION I – EXCLUSIONS

We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

**Frozen Plumbing**
Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by freezing, unless:

1. You do your best to maintain heat in the building or structure; or
2. You drain the equipment and shut off the water supply if the heat is not maintained.

(Doc. No. 15-1). After receiving this communication from State Farm, the Plaintiff completed repairs to his property. *See generally* (Doc. No. 17-1 at 182).

Several months later, on September 8, 2023, Plaintiff's counsel sent a Demand Letter and Invocation of Appraisal to State Farm. (*Id.* at 176). The Letter included a demand for over $113,000.00 for damages and attorneys' fees. (*Id.*). The Letter also demanded State Farm to participate in the appraisal process to resolve any "dispute as to the amount of loss." (*Id.* at 180).

The Letter requested State Farm to "[c]onsider this written notice required pursuant to the appraisal clause in the contract . . . as necessary to trigger [the] duty to name an appraiser and participate in the appraisal process." (*Id.*).

On September 20, 2023, State Farm responded to the Demand Letter. (Doc. No. 15-2 at 27). State Farm invoked "its contractual right under the policy to inspect the damaged property of its insured." (*Id.* at 29). On October 31, 2023, State Farm met with the Plaintiff, who "confirmed that the repairs had been completed and property rented to a tenant." (*Id.*). On November 9, 2023, State Farm sent a letter Plaintiff's counsel that stated "[b]y completing repairs to the damaged part of the dwelling before requesting appraisal, the insureds waived the right to appraisal." (*Id.*). Further, State Farm wrote that "[b]ecause the damaged property itself is no longer available for inspection by an appraisal panel, State Farm is prejudiced and appraisal is impractical." (*Id.*).

Plaintiff filed this lawsuit in Texas state court on March 4, 2024. (Doc. No. 1). On April 17, 2024, State Farm properly removed the lawsuit to this Court. (*Id.*). In his First Amended Complaint, Plaintiff alleges that State Farm is liable for (1) breach and anticipatory breach of contract, (2) breach of the duty of good faith and fair dealing, (3) deceptive trade practices and unconscionable conduct, (4) violations of the Texas Prompt Payment of Claims Act, and (5) unfair insurance practices under Chapter 541 of the Texas Insurance Code. State Farm moved for summary judgment on each of these claims.

## II.    LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*,

485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### III.   ANALYSIS

Plaintiff pleaded five separate causes of action against State Farm, including (1) breach and anticipatory breach of contract, (2) breach of the duty of good faith and fair dealing, (3) deceptive trade practices and unconscionable conduct, (4) violations of the Texas Prompt Payment of Claims Act, and (5) unfair insurance practices under Chapter 541 of the Texas Insurance Code. State Farm requests this Court to grant summary judgment on the breach of contract and extra-contractual claims. (Doc. No. 15). The Court reviews the admissible summary judgment evidence presented on Plaintiff's contractual and extra-contractual claims, in turn, and grants summary judgment on each cause of action.

A. **Summary Judgment Evidence**

As a preliminary matter, this Court addresses the Plaintiff's objections to State Farm's summary judgment evidence. Plaintiff objects to the entirety of the State Farm internal claim file—containing internal files and correspondence with the Plaintiff—because the documents "have not been properly authenticated as business records" under the Federal Rules of Evidence 803(6). "Business records kept in the ordinary course of business and made at or near the time by, or from information provided by, a person with knowledge are admissible, if they are verified by a custodian of records or another qualified witness." *Rtree Logistics, LLC v. Neely Coble Co.*, 2025 WL 2147387, at *3 (S.D. Tex. Jul. 29, 2025). The Fifth Circuit has explained that "materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Id.*

Plaintiff challenges the admissibility of the internal claim file, which includes communications between State Farm and the Plaintiff. State Farm provided a declaration from Annette Wadas (the "Wadas Declaration") to lay the foundation for the internal claim file as summary judgment evidence. (Doc. No. 15-2 at 1). The Wadas Declaration states that she is a Team Manager for State Farm and has personal knowledge of the Barona claim. (*Id.*). The Wadas Declaration further states that "[i]t is the ordinary course of business for State Farm to maintain records regarding the claims of its insureds, which records are made at the time of the acts, transactions, occurrences, and/or events reflected in the records, or within a reasonable time

thereafter, by or from information transmitted by someone with personal knowledge of such acts, transactions, occurrences, and/or events." (*Id.*). Plaintiff contends that State Farm failed to provide such "magic language" that the documents "were made at or near the time of the events by someone with knowledge, kept in the regular course of business, or that it was the regular practice to make such records." (Doc. No. 17 at 4) (citing FED. R. EVID. 803(6)(A)–(E)). Such an objection "elevates form over substance," *Rtree Logistics*, 2025 WL 2147387, at *3. After all, the Wadas Declaration sets out an entire paragraph dedicated to the "ordinary course of business" of maintaining these types of documents that addresses the heart of the Rule 803(6) hearsay exception. While the Declaration does not necessarily set out a verbatim checklist of the Rule 803(6) prongs, the Declaration—at the very least—is "*capable* of being presented in a form that would be admissible in evidence." *Maurer*, 870 F.3d at 384. Thus, the Court hereby overrules Plaintiff's objection to the "Claim File Excerpts" and the "November 9. 2023 Denial Letter."

Plaintiff also objected to the Wadas Declaration on the grounds of lack of personal knowledge and improper opinion testimony. To the extent that the Wadas Declaration provides any opinion testimony unrelated to the authenticity of the Claim File Excerpts, the Court grants the objection and will not rely on any such evidence to support this analysis. The Court will address this specific objection if the evidence later becomes relevant to the summary judgment analysis.

Most importantly, the crucial portions of the State Farm Claim File Excerpts and the other portions of its summary judgment evidence pertaining to the actions of the Plaintiff were verified by the Plaintiff during his deposition.

### B. Breach of Contract and Anticipatory Breach of Contract

Plaintiff alleges that State Farm breached the insurance agreement and failed to adequately compensate Plaintiff for the damages to the home. (Doc. No. 5 at 7). As a federal court sitting in

diversity, this Court applies Texas law to this state law claim. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To establish a claim for breach of contract, the Plaintiff must prove that (1) a valid contract exists, (2) the plaintiff performed or tendered performance as contractually required, (3) the defendant breached the contract by failing to perform or tender performance as contractually required, and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great Western Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). "For an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Hamilton Props. v. American Ins. Co.*, 643 Fed. App'x 437, 439 (5th Cir. 2016). "Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024).

Plaintiff has two breach of contract theories. First, Plaintiff argues that State Farm breached the contract by refusing to cover the damage. Second, Plaintiff argues that State Farm breach the contract by failing to participate in the appraisal process. The Court separately addresses each of these arguments.

### 1. The contract does not require State Farm to cover the frozen pipe damage.

Plaintiff argues that State Farm is contractually obligated to provide insurance coverage for the damages caused by the burst frozen pipe. "The terms used in an insurance policy are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Schnell*, 98 F.4th at 156. "When the terms of an insurance policy are clear and unambiguous a court may not vary those terms." *Id.* "A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

In this case, the insurance policy between State Farm and the Plaintiff clearly outlines the many exclusions to the policy coverage. (Doc. No. 15-1). As the general rule, the policy states that "[State Farm] insure[s] for accidental direct physical loss to Covered Property." (*Id.*). Nevertheless, this general rule is subject to "SECTION I – EXCLUSIONS." (*Id.*). The policy unambiguously states that State Farm will not provide coverage for several enumerated exclusions.

One of the exclusions—a carveout to policy coverage—is any damage caused by "Frozen Plumbing." (*Id.*). The policy defines "Frozen Plumbing" as "[w]ater, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment caused by freezing." (*Id.*). Since "Frozen Plumbing" is an exclusion listed in Section I, the policy carves out any resulting damage from policy coverage—with two narrow exceptions. First, the policy states that State Farm *will* cover any "Frozen Plumbing" damages if the insured did his "best to maintain heat in the building or structure." (*Id.*). Second, the policy states that State Farm *will* cover any "Frozen Plumbing" damages if the insured "drain[ed] the equipment and shut off the water supply if the heat is not maintained." (*Id.*). These are the only two exceptions listed, and the policy unambiguously states that State Farm will not cover any damages in this "Frozen Plumbing" category unless one of these exceptions is met.

The facts in this case do not satisfy either of these exceptions. As to the first exception to the "Frozen Plumbing" exclusion, Barona admitted that he intentionally turned off the heat to the building to perform repairs. (Doc. No. 15-2 at 10, 19). The heat outage was not caused by any unforeseen forces or a widespread power outage out of Barona's control. As a matter of law, his intentional choice to turn the heat off to his building in freezing weather makes him ineligible to satisfy the ordinary meaning of the exception for "do[ing] your best to maintain heat in the building or structure." (Doc. No. 15-1). The insured, in fact, did just the opposite. That leaves the remaining

8

frozen plumbing exception—"drain[ing] the equipment and shut[ting] off the water supply if the heat is not maintained." (*Id.*). The undisputed facts in this case also render Barona ineligible this second exception. He admitted that he did not drain his equipment. (Doc. No. 15-2 at 19). He also admitted that he did not shut off his water source after he intentionally shut off the heat. (*Id.*). Since Plaintiff does not fall within the purview of either of the exceptions to the "Frozen Plumbing" exclusion, State Farm has no contractual obligation to cover the damages. Accordingly, the Court holds that State Farm did not breach the insurance policy by refusing to provide coverage for the Plaintiff's damage caused by frozen plumbing.

   2. **The contract does not require State Farm to participate in the appraisal process.**

In his second point to support his breach of contract claim, Barona argues that State Farm breached the agreement when it failed to participate in the appraisal process. "Appraisal clauses, commonly found in homeowners . . . policies in Texas, provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.2d 404, 406 (Tex. 2011). Appraisal clauses are limited in scope to only address the disputed amount of loss—not any dispute over liability. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 890 (Tex. 2009) (discussing an identical State Farm appraisal clause). The "ordinary meaning of the words" in an appraisal clause directs appraisers to decide the "amount of loss" and "not to construe the policy or decide whether the insurer should pay." *Id.* Texas courts have been clear: "the scope of appraisal is damages, not liability." *Id.*

In this case, the scope of the appraisal clause is limited to any dispute over the amount of damages—not determining whether State Farm should cover the property damage at all. The clause states: "[i]f [State Farm] and [Barona] disagree on **the value of the property** or **the amount of loss**, either may make written demand for an appraisal of the loss." (Doc. No. 15-1 at 18)

9

(emphasis added). While Barona argues that he properly demanded to invoke the appraisal process, the law requires that the scope of the appraisal process be limited to the amount of damages. There was no dispute over the amount of damages. The dispute was, and continues to remain throughout this litigation, whether State Farm is liable for any coverage at all. This is the type of dispute that falls squarely outside of the scope of appraisal. The Court holds State Farm did not have any obligation to participate in the appraisal process.

In conclusion, the Court holds that under the unambiguous terms of the agreement, State Farm did not have any contractual obligation to provide coverage for the damages to Barona's property caused by the frozen plumbing because State Farm has demonstrated (and the Plaintiff essentially admitted under oath) that the exclusion applies to this case. Further, the Court holds that because this dispute was limited to liability, State Farm had no obligation to participate in the appraisal process. For the foregoing reasons, the Court grants summary judgment as to Plaintiff's breach of contract claim.

### C. Extra-Contractual Claims

In addition to his breach of contract claim, Barona alleges four separate extra-contractual causes of action, including the breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practice Act, violations of the Texas Prompt Payment of Claims Act, and violations of Chapter 541 of the Texas Insurance Code. (Doc. No. 5). In general, "[a]n insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). Nevertheless, "[w]hen the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive." *State Farm Lloyds v.*

*Page*, 315 S.W.3d 525, 532 (Tex. 2010). The Court briefly addresses each of these extra-contractual claims and grants summary judgment on each cause of action.

### 1. Breach of the Duty of Good Faith and Fair Dealing

In his second cause of action, Barona alleges that "Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to an insured in insurance contracts." (Doc. No. 5). "An insurer breaches this duty and will be liable if it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Switzer v. State Farm Lloyds*, 642 F.Supp.3d 568, 572 (W.D. Tex. Nov. 22, 2022) (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50–61 (Tex. 1997)). "As long as the insurer has a reasonable basis to deny . . . a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* (quoting *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997)).

As discussed above, the unambiguous terms of the insurance policy establish that an exclusion exists for any damages caused by "Frozen Plumbing" unless one of two narrow exceptions apply. State Farm established (and Barona's own evidence even demonstrated) that neither of the exceptions to the general exclusion applied to this case. State Farm provided correspondence that detailed the reasoning for the denial of Barona's claim. (Doc. No. 15-2 at 19). The correspondence cited the relevant provisions of the insurance policy. (*Id.*). Barona did not provide any evidence that State Farm failed to comply with other statutory obligations related to the investigation or communication about the claim. Barona has provided no evidence that State Farm breached the duty of good faith. Under the "reasonable basis" standard, the Court finds as a matter of law that State Farm adequately supported its decision to deny coverage based on the

reasonable basis of the plain terms of the agreement. Therefore, the Court finds that there is no genuine dispute of material fact and accordingly, grants summary judgment on this claim.

### 2. Violations of Chapter 541 of the Texas Insurance Code

Barona also alleges that State Farm violated Chapter 541 of the Texas Insurance Code. This cause of action based upon unfair insurance practices "share[s] the same predicate for recovery as a bad faith claim. *Id.* (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)). "Therefore, if a court finds a matter of law that an insurer held a reasonable basis for denial of an insurance claim, a cause of action asserting unfair practices in violation of § 541 of the Texas Insurance Code is precluded as a matter of law." *Id.* (citing *Higginbotham*, 103 F.3d at 460)). As discussed above, this Court held as a matter of law that State Farm had a reasonable basis for denying Barona's claim. Therefore, Barona's claim for unfair insurance practices under Chapter 541 of the Texas Insurance Code is precluded as a matter of law. Accordingly, the Court grants summary judgment.

### 3. Deceptive Trade Practices and Unconscionable Conduct

Barona also alleges that State Farm violated the Texas Deceptive Trade Practices Act ("DTPA") § 17.46(a) by making false statements regarding the insurance policy. (Doc. No. 5). His Complaint alleges that "[t]he policy was advertised as having certain coverages and providing excellent customer service, but when Plaintiff made a valid claim, Defendant denied it without proper justification." (*Id.*). As a matter of law, this claim also shares the "same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460. As discussed above, this Court held that State Farm had a reasonable basis for denying Barona's insurance claim. As such, his DTPA claim is precluded as a matter of law. The Court grants summary judgment on this cause of action.

### 4. Violations of the Texas Prompt Payment of Claims Act

Lastly, Barona alleges that State Farm violated the Texas Prompt Payment of Claims Act ("TPPCA") by failing to, among other things, "perform its duties, including acknowledging the claim, recording the acknowledgement, commencing the investigation, and requesting information from the claimant." (Doc. No. 5). Nevertheless, a plaintiff seeking to establish TPPCA damages must establish that the insurer is contractually obligated to pay some amount under the insurance policy. *Schnell*, 98 F.4th at 159. As discussed above, the unambiguous terms of the insurance policy do not require State Farm to cover Barona's property damages. Thus, Barona has no contractual damages and cannot maintain this TPPCA claim. The Court grants summary judgment on this cause of action.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby grants State Farm's Motion for Summary Judgment on each of Plaintiff's causes of action. All other pending motions are denied as moot. The Court hereby dismisses this action with prejudice.

It is so ordered.

Signed on this the 12th day of December 2025.

Andrew S. Hanen
United States District Judge